[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] AMENDED CORRECTED MEMORANDUM OF DECISION
The plaintiff husband, 42 (d.o.b. 1/30/60), and the defendant wife, 42 (d.o.b. 4/1/60), whose birth name is King, married on November 5, 1988 in White Plains, New York. The plaintiff resided in Connecticut for over a year before beginning this action for dissolution of the marriage and other relief thereby providing this court with jurisdiction. The defendant filed an answer and cross complaint on September 5, 2002 also seeking a dissolution and other relief. They have four children, Charles E. born August 5, 1989; Michael A. born April 25, 1991; Lauren R. born February 28, 1994 and Emily P. born October 19, 1995. They submitted a Stipulation re: Custody and Parenting Plan which the court has reviewed, has accepted and will order as part of the final judgment, a copy being incorporated by reference herein.
The plaintiff, who enjoys good health, is a graduate of Syracuse University where he received a B.S. in Business Administration and Construction Management in 1982. He then began working for Pavarini Construction Co., Inc. where he remained until he obtained employment with Eugene Racanelli, Inc. on September 15, 1999 as General Manager of its Fairfield County Regional Office doing business as "Racanelli-Pavarini" at a base salary of $115,000 plus 10% of the net profits of the office. In addition, he receives health care and dental coverage, life insurance, 15 days paid vacation, 10 paid holidays, 10 paid sick days and an employee discretionary 401k retirement plan. (Plaintiff's Exhibit #4.) His current base salary is $119,025. He received no bonus for 2001 as of the time of trial and to resolve the issue the parties submitted a stipulation stating that in the event the plaintiff receives a bonus for services rendered in 2001 he will pay 50% of the gross as alimony to defendant. (Plaintiff's Exhibit 37.)
When married, the plaintiff had a retirement plan at Pavarini Construction worth $15,125.63 as of June 30, 1988 which was increased by an employer contribution of $2,929.40 as well as interest credited at year end bringing the value to $18,680.24. (Plaintiff's Exhibit #19.) By CT Page 3705 its termination date of September 28, 1999 the retirement plan's value had grown to $135,317.57 (Plaintiff's Exhibit #20) which was rolled into a Fidelity IRA (Plaintiff's Exhibit #21).
The defendant, who enjoys good health, after attending West Virginia Wesleyan for 1-1/2 years, attended the Fashion Institute and graduated with an associate's degree in pattern making design. She then worked for a dress manufacturing company and then for a shirt company. She has no typing or computer skills. Since the marriage she has been a full time mother and homemaker. She brought no assets to the marriage but had a college loan balance and $500 owed Visa. The parties have stipulated that the defendant may earn gross earnings up to $15,000 per year and the plaintiff agrees not to file a motion to reduce alimony or child support based on such earnings. (Plaintiff's Exhibit #38.)
The plaintiffs' parents, George and Mary Pavarini, had subdivided their property located on Byram Shore Road, Greenwich, Ct. in 1985 and by deed dated March 23, 1990 George Pavarini conveyed Lot #1 to the plaintiff (Plaintiff's Exhibit #8) with a right of first refusal in the event that the grantee elects to sell the property conveyed to him. The plaintiff paid no consideration for the conveyance. The gift tax return valued the lot at $75,900 and the cash gifts at a total of $210,451. (Plaintiff's Exhibit #34.) These gifts enabled the plaintiff to build a house for his family. The plaintiff employed HH General Contractors who billed $335,387 for their work. (Plaintiff's Exhibit #9.) The plaintiff calculated the entire construction cost to be $365,525.99 and paid with "Pavair Note and Gifted Amount $238,451.22" and by "Total Out Of Pocket ($110,000 financed through PCC) $127,074.77." The promissory note offered in evidence by the plaintiff is dated September 13, 1993 and the check of Pavair Corporation attached to the note bears the same date on its face but the backside of the check is not supplied. (Plaintiff's Exhibit #10.) There is a check dated Dec. 3, 1990 payable to plaintiff from Pavair for $20,000 and a second check dated Dec. 20, 1990 payable to plaintiff from Pavair for $18,000 (Plaintiff's Exhibits #32 and #33) representing part of the total in gifts to the plaintiff. The property was appraised and as of September 30, 2002 the appraiser's opinion of fair market value was $1,800,000. The property has a first mortgage balance of $157,900 and an equity credit line balance of $217,600. The court accepts this appraisal. The parties submitted a stipulation dated October 9, 2002 (Exhibit #36) incorporating their earlier agreement dated September 17, 2001 (Exhibit 13) agreeing that the real estate should be listed for sale as soon as practicable after final judgment. The court accepts the parties' stipulations of September 17, 2001 and October 9, 2002 and will order sale of the home as part of the judgment. CT Page 3706
The plaintiff had several complaints about the defendant's ability to run the house in that it was not neat or picked up and also that his wife had gained weight. There was no evidence that he helped to pick up after the children and the defendant said he did not. A cleaning lady was never employed during the marriage. Another cause of the breakdown was the plaintiff's interest in another lady which reached a crisis stage during the 1999 Christmas season when the defendant discovered a gift intended for the other lady. The plaintiff then vacated the home in the next month, January 2000. The complaint was served March 24, 2000.
The plaintiff owns a condominium unit with a garage space known as 1 Landmark Square Unit 527 that he had acquired on July 28, 1988 as an investment for $125,955. (Plaintiff's Exhibits #14 and #15.) As of September 18, 2002 it was appraised as having a market value of $135,000. (Plaintiff's Exhibit #2.)
The plaintiff is indebted to Pavair Corporation by virtue of two notes, the earlier one dated November 16, 2000 for $10,000 with interest at 7.5% and a second note dated April 3, 2001 for $10,000 with interest at 7.5%.
The court notes that each party drew on the equity credit line for attorneys fees. The plaintiff drew a total of $65,000 and the defendant drew a total of $54,000.
The plaintiff offered in evidence an "Agreement" signed by both parties on 9/17/01 wherein, in addition to the sale of the home, the attempt is made to exclude a motor vehicle purchase and cash distributed to the plaintiff from consideration "as part of the marital assets to be divided." (Plaintiff's Exhibit #13.) The agreement was not submitted to the court for approval until the October 9, 2002 stipulation incorporated it by reference and the court finds it goes well beyond what is permitted by Conn. Practice Book Sec. 25-5 (a) (1). The court declines to adopt it or to enforce said provisions other than the sale of the house.
The court has considered the evidence in light of relevant case law and the relevant statutes and enters the following decree.
1. Judgment is rendered dissolving the marriage on the ground of irretrievable breakdown and each party is declared to be unmarried.
2. Joint legal custody is ordered for the four minor children with primary physical residence being with their mother and visitation by the father all as set out in the parties' stipulation re: custody and parenting plan filed with the court on October 8, 2002 (Plaintiff's CT Page 3707 Exhibit #28) and incorporated herein as court orders.
3. The plaintiff shall pay to the defendant, as periodic alimony taxable to the payee and deductible for income tax purposes by the payer, the sum of $1,500 per month until the death of either party, the defendant's remarriage or her cohabitation as defined by statute and case law or until December 31, 2013. The term is not modifiable but the amount is. The court also orders the stipulation re: bonus (Plaintiff's Exhibit #37) and the stipulation re: earning capacity of the defendant (Plaintiff's Exhibit #38) both being attached hereto for reference.
4. The plaintiff shall pay to the defendant as child support the sum of $585 weekly. The court adopts the plaintiffs' guidelines worksheet and attaches same for reference.
5. The residence known as 181 Byram Shore Road, Greenwich, Ct. is ordered sold and the parties' stipulation re: sale of residence (Plaintiff's Exhibit #36) is adopted as the order of the court and incorporated herein. The proceeds shall be divided as follows. All costs of sale including all encumbrances shall be paid. From the remaining balance the plaintiff shall be paid $286,351 representing the total gifts he received from his parents. The defendant shall next be paid $11,000 as an allowance to defend thereby making the totals drawn for legal fees equal. The remaining proceeds shall be divided equally between the parties. Either party may move for articulation of this order, jurisdiction being retained until the sale is completed.
6. The plaintiff shall retain the condominium unit with garage space as his sole property but shall pay the defendant $49,500 as her share of the appreciation in value of the unit, payment to be made within sixty days of date of entry of judgment.
7. The plaintiff shall be solely responsible for repayment of the September 13, 1993 note in the principal amount of $28,600 payable to Pavair Corporation (Exhibit #10).
8. The plaintiff shall be solely responsible for repayment of the two notes, each for $10,000, payable to Pavair Corporation. (Exhibits #6 #7.)
9. The plaintiff is awarded the GMC Suburban and the Plymouth Voyager as well as his firearms collection that he values at $5,000.
10. The parties shall divide equally the two Fidelity Union savings accounts, the Fidelity portfolio, the three Fidelity IRA accounts and the CT Page 3708 ERI 401(k) plan.
11. The parties shall divide their miscellaneous personal property as stipulated by them by written stip submitted at trial. (Plaintiff's Exhibit #35.)
12. They each shall retain their respective checking accounts.
13. The plaintiff shall maintain medical insurance for the children and shall cooperate with the defendant if she elects to secure COBRA coverage for herself.
14. The parties shall continue to be solely responsible for charge accounts and credit cards in their respective names.
15. The parties have deferred requesting an educational support order at this time as set forth in (Exhibit #28, para. 8(x)) and either party may petition for such order at a subsequent date.
16. The parties have executed a "Stipulation Re: Motion To Open Judgment Postjudgment," dated February 20, 2003. The defendant's Motion To Open Judgment, dated and filed on January 9, 2003, was granted today. The terms in said Stipulation are included in this Memorandum and the document is annexed hereto and included herein as part of the judgment.
Judgment, as amended herein and as previously corrected, is now rendered.
 SO ORDERED. HARRIGAN, J.T.R.
CT Page 3709